**FILED**
IN CLERK'S OFFICE
U.S. DISTRICT COURT E.D.N.Y.

★  FEB 13 2018  ★

LONG ISLAND OFFICE

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

MITSUBISHI MOTORS NORTH AMERICA, INC.,  :

                Plaintiff,  :

    - against -  :

GRAND AUTOMOTIVE, INC. d/b/a PLANET  :
MITSUBISHI,  :

              Defendant.  :

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

Case Number _____

# CV18 0814

## FEUERSTEIN, J.

## LOCKE, M. J.

**MEMORANDUM OF LAW IN SUPPORT OF
MITSUBISHI MOTORS NORTH AMERICA, INC.'S MOTION
FOR A TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION**

SEYFARTH SHAW LLP
620 Eighth Avenue
New York, NY 10018-1405
(212) 218-5500

Attorneys for Plaintiff Mitsubishi Motors North America, Inc.

44380711v.1

## Table of Contents

Page

I.     PRELIMINARY STATEMENT ............................................................. 1

II.    BACKGROUND ................................................................................. 2

      A.     MMNA's Business................................................................... 2

      B.     MMNA and Planet Enter Into the Dealer Agreement ............... 3

      C.     Essential Terms of the Dealer Agreement ................................ 3

      D.     Planet's Breach of the Dealer Agreement................................. 5

III.   TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION.......... 9

      A.     Legal Standard ....................................................................... 9

      B.     MMNA Has a Substantial Likelihood of Success on the Merits.............. 10

      C.     MMNA Faces a Substantial Threat of Irreparable Harm.......................... 13

      D.     The Harm to MMNA Outweighs Any Potential Damage to Planet ......... 15

      E.     Notice to Planet...................................................................... 16

      F.     A Temporary Restraining Order and Injunctive Relief Are Appropriate. 17

IV.    PRAYER FOR RELIEF ...................................................................... 18

Plaintiff, Mitsubishi Motors North America, Inc. ("MMNA"), brings this Motion, by Order to Show Cause, for a Temporary Restraining Order and Preliminary Injunction against defendant Grand Automotive, Inc. d/b/a Planet Mitsubishi ("Planet").

## I.    PRELIMINARY STATEMENT

Planet is flagrantly violating its agreement with MMNA to operate a Mitsubishi dealership, and to use certain Mitsubishi trade names, trademarks, and trade dress, exclusively and solely at a single, specific location at 256 N. Franklin Street, Hempstead, New York (the "Dealership Premises").  Despite Planet's promise to operate a Mitsubishi dealership at that location, Planet lost its lease for the Dealership Premises, through no fault of MMNA.  Having lost the lease for the Dealership Premises, Planet sought to move its dealership to a commercially inferior location.  After MMNA denied Planet's request, as MMNA is entitled to do pursuant to the terms of its October 31, 2016 Dealer Sales and Service Agreement with Planet (the "Dealer Agreement"), Planet unjustifiably resorted to self-help and moved its dealership to the new, unauthorized location anyway.  Despite MMNA's demands that Planet cease its unlawful and unauthorized conduct, Planet is continuing to operate an unauthorized dealership, and is using Mitsubishi trade names, trademarks, and trade dress, at this unapproved and improper location.

Planet's failure to maintain a dealership at the Dealership Premises, its willful and intentional operation of a rogue Mitsubishi dealership, and its improper utilization of Mitsubishi trade names, trademarks, and trade dress at this unauthorized location, are all clear breaches of the Dealer Agreement.  Moreover, Planet is engaging in unfair competition by using portions of MMNA's corporate name to operate and promote Planet's dealership at this unauthorized location, falsely communicating to consumers and other MMNA dealers that MMNA has authorized and approved of Planet and its commercial activities, including to operate and utilize the Mitsubishi trade names, trademarks, and trade dress, at the unauthorized location.

Notwithstanding MMNA's demand that Planet cease its unlawful activities, Planet continues to disregard its obligations and violate MMNA's clearly established and unquestionable rights.

MMNA is suffering substantial and irreparable harm as a result of Planet's unlawful conduct, and requests that this Court award a Temporary Restraining Order and Preliminary Injunction to restrain and enjoin Planet's unfair competition and continued breach of the Dealer Agreement during the pendency of this action.

MMNA incorporates herein by reference, as if fully set forth at length, its Complaint.

## II.    BACKGROUND

This Motion for Temporary Restraining Order and Preliminary Injunction is supported by the Declarations of John McElroy (the "McElroy Declaration") and Edward F. Maluf (the "Maluf Declaration"), attached hereto as Exhibits 1 and 2, respectively, and incorporated herein. The relevant facts are set forth in those declarations and in the Complaint, and are summarized briefly below.

### A.    MMNA's Business

MMNA is a well-known corporation that has operated in the United States since approximately 1981. MMNA distributes Mitsubishi brand motor vehicles, parts, and accessories through a network of authorized retail dealers in the United States. These dealers, in turn, sell Mitsubishi products to consumers in their local areas. MMNA is also a licensee of certain long-established and valuable Mitsubishi trademarks, including the word mark MITSUBISHI, United States Patent and Trademark Office ("USPTO") Registration No. 0,844,427 (registered in 1968), and the famous three-diamond logo design mark, USPTO Registration No. 0,931,665 (registered in 1972) (collectively, the "Mitsubishi Marks").[1]

---

[1] McElroy Declaration ¶¶ 3-5.

MMNA authorizes local dealers, including in New York, to operate dealerships to sell and provide services relating to, among other products, Mitsubishi motor vehicles, parts, and accessories pursuant to Dealer Sales and Service Agreements.  As part of these agreements, MMNA authorizes local dealers to use the Mitsubishi Marks and related trade names, trademarks, and trade dress at specific dealership locations agreed to by MMNA.[2]

### B.     MMNA and Planet Enter Into the Dealer Agreement

Planet has been authorized by MMNA to act as a Mitsubishi dealer since 2012.  Recently, the majority of its sales have been of used motor vehicles.  For example, roughly three-fourths of the vehicles sold by Planet at its dealership in 2017 were used vehicles.[3]

On or about October 31, 2016, MMNA and Planet entered into the Dealer Agreement to authorize Planet to continue to operate as a Mitsubishi dealer for a term of three years.  The Dealer Agreement authorized Planet to operate a car dealership selling and servicing certain Mitsubishi motor vehicles and related parts, accessories, and options at a dealership located exclusively at 265 N. Franklin Street, Hempstead, New York 11550 (the "Dealership Premises").[4]

### C.     Essential Terms of the Dealer Agreement

Pursuant to Section 6 of the Dealer Agreement, Planet "may sell *MMNA Products* to customers wherever they may be located . . .[but] in order that **MMNA** may establish and maintain an effective network of *MMNA Dealers* for the sale and servicing of *MNNA Products*,

---

[2] *Id.* ¶ 6.
[3] *Id.* ¶ 9.
[4] A copy of the Dealer Agreement, including its accompanying Dealer Development Plan ("Development Plan") and Dealer Sales and Service Agreement Standard Provisions (the "Standard Provisions"), is annexed as Exhibit A to the McElroy Declaration.  *See* McElroy Declaration ¶ 11.

[Planet] specifically agrees that, without the prior written approval of **MMNA**, it shall not display *MMNA Trademarks* or, either directly or indirectly, establish any place or places of business for the conduct of any of its MMNA dealership operations, except on the *Dealership Premises* . . ."[5] Section 6 further provides that Planet "shall maintain all requirements and conditions of this [Dealer Agreement] as outlined in [Planet's] most recent Dealer Development Plan."[6]

Section 8 of the Dealer Agreement provides that Planet "agrees to be bound by and comply with each and every term of this" Dealer Agreement and the accompanying Standard Provisions.[7] Among other things, the Standard Provisions define certain terms in the Dealer Agreement. These defined terms include "MMNA Trademarks," which is defined in Section II.E of the Standard Provisions as "the trademarks, service marks, design marks and trade names which are used by MMNA in connection with *MMNA Products*, including, without limitation, the names 'Mitusbishi' and 'MMNA,' and the Mitsubishi three-diamond logo."[8]

Section IV of the Standard Provisions provides that Planet "agrees that it shall not, under any circumstances . . . establish any MMNA dealership premises or operations other than those expressly approved by MMNA. [Planet] agrees to operate its MMNA dealership only on *the Dealership Premises*, and to provide and utilize the *Dealership Facilities* only in accordance with standards established by MMNA set forth in the *Dealer Development Plan* . . . . Accordingly, [Planet] agrees that it shall not modify, relocate, change the usage of, reduce or

---

[5] Ex. A to the McElroy Declaration at p. 4 (italicized and bold emphasis in original; underlined emphasis added).
[6] *See id.*
[7] *See id.*
[8] *See id.* at Standard Provisions, p. 2 (emphasis in original).

44380711v.1

expand the *Dealership Premises* . . . without first consulting with **MMNA** and obtaining its written approval of such changes."[9]  Appendix B of the Development Plan specifies the facilities that Planet is required to "provide and utilize" on the Dealership Premises, identifying the specific facilities by a plot plan and photographs.[10]

Section IX of the Standard Provisions provides that Planet "acknowledges that **MMNA** is the exclusive owner of, or is authorized to use and to permit [Planet] and others to use, the *MMNA Trademarks*.  During the term of *this Agreement*, [Planet] is granted a nonexclusive privilege of displaying and otherwise using the *MMNA Trademarks* in connection with and for the purpose of identifying, advertising and selling *MMNA Products*; provided, however, that [Planet] shall promptly discontinue the display and use of any such *MMNA Trademarks* . . . whenever requested to do so by **MMNA**."[11]  Section IX of the Dealer Agreement further provides that "[i]f [Planet] uses the words 'Mitsubishi Motors' as part of its trade name, upon the request of **MMNA** or upon termination of *this Agreement* for any reason whatsoever, [Planet] shall cease to use the words 'Mitsubishi Motors' in its trade name and shall take or cause to be taken all steps to eliminate such words therefrom."[12]

**D.     Planet's Breach of the Dealer Agreement**

In accordance with the terms of the Dealer Agreement, MMNA performed all of its obligations, including by authorizing Planet to operate a Mitsubishi dealership at the Dealership Premises and use the Mitsubishi Marks and other Mitsubishi trade names, trademarks, and trade dress at or in connection with the Dealership Premises.[13]  Among other things, Planet

---

[9] *Id.* at Standard Provisions, p. 8 (italicized and bold emphasis in original; underlined emphasis added).

[10] *See id.* at Development Plan, p. 6.

[11] *Id.* at Standard Provisions, pp. 20-21 (emphasis in original).

[12] *Id.* at Standard Provisions, p. 21 (emphasis in original).

[13] McElroy Declaration ¶ 13.

accordingly installed signs at the Dealership Premises that included the famous three-diamond logo design mark and the words "Mitsubishi Motors," and used the trade name "Planet Mitsubishi" to operate the dealership.[14]

Planet leased the Dealership Premises from a third party (the "Franklin Street Owner"). Planet's lease provided that the lease would expire on August 7, 2017 unless Planet exercised its option to renew the lease.  However, without advising MMNA, Planet failed to exercise that option.[15]

On August 31, 2017, Planet requested MMNA's permission to relocate its dealership to Valley Stream, New York, but made that request without disclosing its failure to exercise its option for the Dealership Premises.  By letter dated October 26, 2017, MMNA denied Planet's request to relocate to Valley Stream.[16]

On or about December 7, 2017, Planet filed a request for adjudication with the New York Department of Motor Vehicles (the "DMV"), challenging MMNA's denial of Planet's request to relocate to the Valley Stream location as "unreasonable" under N.Y. Veh. & Traf. Law § 463.2(dd).[17]  As part of its request for adjudication, Planet disclosed the impending expiration of its lease on February 6, 2018.[18]

On or about December 13, 2017, Planet proposed to relocate its Mitsubishi dealership to 306 Main Street, Hempstead, New York (the "Unauthorized Location").  By letter dated January

---

[14] *Id.* ¶ 14.
[15] *Id.* ¶¶ 15-16.
[16] *Id.* ¶¶ 17-18.
[17] N.Y. Veh. & Traf. Law § 463.2(dd) provides that a franchisor may not "unreasonably prevent or refuse to approve the relocation of a dealership to another site within that dealership's relevant market area."
[18] McElroy Declaration ¶¶ 19-20.

17, 2018, MMNA denied Planet's request to relocate to the Unauthorized Location. As set forth in MMNA's letter of January 17, 2018, the Unauthorized Location is vastly inferior to Planet's authorized location because, among other things, it has insufficient space for the conduct of Mitsubishi dealership operations, does not have a high amount of consumer foot traffic, lacks easily accessible parking, and is not readily visible to consumers.[19]

On January 24, 2017, Planet withdrew its request for adjudication with the DMV. On or about February 5, 2018, Planet filed a second request for adjudication with the DMV, challenging, among other things, MMNA's denial of Planet's request to relocate to the Unauthorized Location as "unreasonable" under N.Y. Veh. & Traf. Law § 463.2(dd).[20]

MMNA learned on or about February 7, 2018 that Planet closed its car dealership at the Dealership Premises and began operating a car dealership at the Unauthorized Location without MMNA's authorization or approval.[21] After opening this unauthorized dealership, Planet posted signs at the authorized Dealership Premises directing potential customers to the Unauthorized Location.[22]

---

[19] *Id.* ¶¶ 21-22.

[20] *See* McElroy Declaration ¶¶ 23-24. Under New York law, the DMV may not certify or authorize a New York motor vehicle dealer to conduct operations as a new motor vehicle dealer at a site not approved by the manufacturer or distributor. *See* N.Y. Vehic. & Traf. Law § 415.7 ("Every new motor vehicle dealer registration certificate shall by its terms permit the sale or lease of the particular lines or makes of new motor vehicles only from a location or locations authorized for such sale or lease . . . [by] the manufacturers or distributors of such new motor vehicles"). Moreover, the DMV has no power to award damages or issue an injunction. *See id.* § 469.1 (stating that a dealer may "request an adjudicatory proceeding" from the DMV or "in lieu thereof, sue for, and have, injunctive relief and damages *in any court of the state* having jurisdiction over the parties" (emphasis added)). Accordingly, the DMV has no power to either authorize Planet to operate at the Unauthorized Location or to provide injunctive or monetary relief to MMNA in the event MMNA prevails in that proceeding.

[21] McElroy Declaration ¶ 25.

[22] Photographs of those signs at the Dealership Premises are annexed as Exhibit B to the McElroy Declaration. *See* McElroy Declaration ¶ 26.

In addition to selling Mitsubishi motor vehicles at the Unauthorized Location, Planet is displaying and otherwise using the Mitsubishi Marks, portions of MMNA's corporate name including "Mitsubishi" and "Mitsubishi Motors," and other Mitsubishi trademarks, trade names, and trade dress at the Unauthorized Location.[23]  For example, Planet has installed large, lighted signs on the exterior of the Unauthorized Location that prominently display both the three-diamond logo design mark and a portion of MMNA's corporate name, "Mitsubishi Motors."[24]

Planet also promotes its dealership at the Unauthorized Location on a website, http://planetmitsubishicars.com (the "Planet Website").  The Planet Website prominently displays, among other things, the three-diamond logo, the phrase "Mitsubishi Motors," and the name "Planet Mitsubishi."  The Planet Website also provides the address of the Unauthorized Location, and states that the Unauthorized Location has a "Mitsubishi Authorized service department" and that Planet is a "Certified Premium Mitsubishi Dealer."  The Planet Website also has a "News" section that displays the address of the Unauthorized Location and specifically refers to MMNA.[25]

On February 8, 2018, counsel for MMNA sent Planet's two counsel a letter via email and overnight Federal Express delivery.[26]  In that letter, counsel for MMNA stated that Planet's use of the Mitsubishi Marks and other Mitsubishi trade names, trademarks, and trade dress at the Unauthorized Location is a breach of the Dealer Agreement.  Counsel for MMNA requested that

---

[23] McElroy Declaration ¶ 28.

[24] Examples of Planet's improper uses of these and other Mitsubishi trade names, trademarks, and trade dress are annexed as Exhibit C to the McElroy Declaration.  *See* McElroy Declaration ¶ 29.

[25] Excerpts from the Planet Website are annexed as Exhibit D to the McElroy Declaration.  *See* McElroy Declaration ¶ 31.

[26] A copy of the February 8, 2018 letter from MMNA's counsel is annexed as Exhibit A to the Maluf Declaration.  *See* Maluf Declaration ¶ 2.

Planet confirm, in writing, that it would immediately cease using those trade names, trademarks, and trade dress at the Unauthorized Location. On February 9, 2018, Planet's counsel responded by stating that Planet would not cease its use of the Mitsubishi Marks or any other Mitsubishi trade names, trademarks, or trade dress.[27]

## III.    TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION

### A. Legal Standard

Federal Rule of Civil Procedure 65(a) authorizes federal courts to issue a preliminary injunction, while Federal Rule of Civil Procedure 65(b) authorizes federal courts to issue a temporary restraining order. The prerequisites for a preliminary injunction and/or temporary restraining order are: "(a) irreparable harm and (b) either (1) likelihood of success on the merits or (2) sufficiently serious questions going to the merits to make them a fair ground for litigation and a balance of hardships tipping decidedly toward the party requesting preliminary relief."[28]

Here, because the relief sought "is 'mandatory,' meaning that it would alter, rather than maintain, the *status quo*," MMNA must demonstrate "a 'clear' or 'substantial' likelihood of success."[29] MMNA clearly meets this standard here.

---

[27] A copy of the February 9, 2018 letter from Planet's counsel is annexed as Exhibit B to the Maluf Declaration. *See* Maluf Declaration ¶ 3.

[28] *Christian Louboutin S.A. v. Yves Saint Laurent Am. Holding, Inc.*, 696 F.3d 206, 215 (2d Cir. 2012); *see also, e.g., Devos Ltd. v. Record*, 2015 U.S. Dist. LEXIS 172929, at *20 (E.D.N.Y. Dec. 24, 2015) (Spatt, J.) (same); *Clark v. Childs*, 2017 U.S. Dist. LEXIS 155847, at *3 (E.D.N.Y. Sept. 22, 2017) (Dearcy Hall, J.) ("It is well established that in this Circuit the standard for entry of a TRO is the same as for a preliminary injunction" (quoting *Andino v. Fischer*, 555 F. Supp. 2d 418, 419 (S.D.N.Y. 2008) (Marrero, J.)).

[29] *See, e.g., Krispy Kreme Doughnut Corp. v. Satellite Donuts, LLC*, 725 F. Supp. 2d 389, 393 (S.D.N.Y. 2010) (Kaplan, J.).

## B.   MMNA Has a Substantial Likelihood of Success on the Merits

MMNA has a substantial likelihood of success on its claims for unfair competition under both federal and New York law, as well as on its claim for breach of contract under state law.

In order to prevail on the unfair competition claims, MMNA must show: "1) that the trademark, trade name or trade dress is valid and legally entitled to protection, and 2) defendants' unlicensed use of the same or similar trademark, trade name, or trade dress is likely to create confusion concerning" MMNA's approval of Planet's commercial activities at the Unauthorized Location.[30] The standard for MMNA's New York common law and statutory claims for unfair competition is identical, except that the common law claim requires a showing of bad faith.[31]

As to the first element—a valid trade name entitled to protection—as set forth in the accompanying McElroy Declaration, MMNA has operated in the United States since 1981, and its company name is known and recognized—and has been known and recognized for decades—by consumers throughout the United States.  Accordingly, MMNA has a valid trade name that is entitled to protection.[32]  The trade name reflects the same well-established, incontestable and famous registered marks, MITSUBISHI and the three-diamond logo, that have received federal protection and exclusivity of use for nearly a half-century.

---

[30] *See Gluco Perfect, LLC v. Perfect Gluco Prods.*, 2014 U.S. Dist. LEXIS 141966, at *53 (E.D.N.Y. Oct. 3, 2014) (Matsumoto, J.) (citing *Virgin Enters. Ltd. v. Nawab*, 335 F.3d 141, 146 (2d Cir. 2003)); *see also* 15 U.S.C. § 1125(a)(1); *Dial-A-Mattress Operating Corp. v. Mattress Madness, Inc.*, 841 F. Supp. 1339, 1345 (E.D.N.Y. 1994) (Platt, J.) ("[T]he senior user of an unregistered service mark or trade name may establish a *prima face* case of . . . unfair competition under both New York State and federal law by showing that the name or mark is distinctive and there is a likelihood that the public will be deceived or confused by the similarity of the marks.").

[31] *See ESPN, Inc. v. Quiksilver, Inc.*, 586 F. Supp. 2d 219, 230 (S.D.N.Y. 2008) (McMahon, J.); *LaChapelle v. Fenty*, 812 F. Supp. 2d 434, 444 (S.D.N.Y. 2011) (Scheindlin, J.).

[32] *See, e.g., Gluco Perfect*, 2014 U.S. Dist. LEXIS 141966, at *55 (trade names entitled to protection where "plaintiff companies have operated since the mid-1990s and are known and recognized by customers by their company names").

As to the second element—likelihood of confusion—courts in this Circuit have held that

the traditional eight-factor test set forth in *Polaroid Corp. v. Polarad Electronics Corp.*, 287 F.2d

492, 495 (2d Cir. 1961) is not applicable where a previously authorized user of a trade name or

trademark uses the name or mark in violation of a relevant agreement.  In that situation, the

defendant is "using the exact same mark [or trade name] they used when they were properly

[authorized], which will generate confusion among [their] customers" *as a matter of law*.[33]

Here, Planet was authorized to use, among other things, portions of MMNA's corporate

trade name, including "Mitsubishi" and "Mitsubishi Motors" in connection with Planet's

commercial activities at the Dealership Premises.[34]  Planet accordingly included "Mitsubishi

Motors" on its signage at the Dealership Premises and operated that location using the trade

name "Planet Mitsubishi."  Planet is now using "Mitsubishi Motors" on its signage at the

Unauthorized Location, and is continuing to use the trade name "Planet Mitsubishi" to carry out

---

[33] *See Dunkin' Donuts, Inc. v. N. Queens Bakery, Inc.*, 216 F. Supp. 2d 31, 44 (E.D.N.Y. 2011)
(Sifton, J.); *see also, e.g., MyPlayCity, Inc. v. Conduit Ltd.*, 2012 U.S. Dist. LEXIS 47313, at *59
(S.D.N.Y. Mar. 30, 2012) (McMahon, J.) ("[B]ecause Conduit continued to distribute MPC's
trademark after its license to do so was terminated, consumers could fairly conclude that Conduit
still had MPC's permission to use the mark, and likelihood of confusion is thus established as a
matter of law"); *Century 21 Real Estate LLC v. Raritan Bay Realty, Ltd.*, 2007 U.S. Dist. LEXIS
34108, at *9-10 (E.D.N.Y. May 9, 2007) (Sifton, J.) ("Raritan continues to advertise on the
internet and post signs in its building indicating that it remains a Century 21 franchisee, using the
same marks as they did when they were properly franchised, despite being in violation of the
franchise agreement . . . .  Such usage will generate confusion among consumers as to . . . their
relationship with Century 21"); *Prudential Ins. Co. of AM. v. Ikomoni*, 1996 U.S. Dist. LEXIS
16433, at *5 (S.D.N.Y. Nov. 4, 1996) (Owen, J.) (The continued use of the name and marks of
Prudential by [defendant] will undoubtedly cause confusion to a public who will assume that
[defendant] continues to operate under the sponsorship of Prudential").  The elements of a *prima
facie* case for unfair competition are the same as those for a trademark infringement case.  *See,
e.g., Gluco Perfect*, 2014 U.S. Dist. LEXIS 141966, at *53.  Thus, authorities referring to
trademark infringement alone apply with equal force to the Court's analysis of MMNA's
likelihood of success on its unfair competition claim.
[34] *See generally* McElroy Declaration and Ex. A thereto.

commercial activities at the Unauthorized Location. Accordingly, because Planet is still using

portions of MMNA's corporate name at the Unauthorized Location, even though Planet is not

authorized to use "Mitsubishi" or "Mitsubishi Motors" at that location, MMNA can establish, *as

a matter of law*, consumer confusion concerning whether Planet was authorized by MMNA to

conduct commercial activities at the Unauthorized Location.

With respect to the additional requirement of bad faith under New York common law,

MMNA can establish that Planet has acted in bad faith in light of the fact that Planet is aware

that it does not have authorization to utilize MMNA's trade names, including because MMNA

advised Planet precisely of its unlawful behavior.[35] Despite being on notice that it is not

authorized to use MMNA's trade names, Planet has continued to utilize "Mitsubishi Motors" and

"Mitsubishi" in connection with its unauthorized dealership at the Unauthorized Location. In

response, Planet has stated that it will not cease its unauthorized use and commercial activities.[36]

MMNA also can demonstrate a substantial likelihood of success on its breach of contract

claim. Under New York law, a party claiming breach of contract must show; (1) the existence of

a contract; (2) performance by the plaintiff; (3) breach by the defendant; and (4) resulting

damages.[37] Harm to goodwill and reputation constitutes damages for purposes of a breach of

contract claim.[38]

MMNA can establish all of these elements. The Dealer Agreement constitutes a valid

contract between the parties. MMNA has performed under the contract, including by authorizing

Planet to operate, and use Mitsubishi trade names, trademarks, and trade dress, at the Dealership

---

[35] *See* Ex. A to the Maluf Declaration.
[36] *See id.* at Ex. B.
[37] *See, e.g., Cacchillo v. Insmed, Inc.*, 551 F. App'x 592, 593-94 (2d Cir. 2014).
[38] *See, e.g., Hard Rock Café Intern. (USA), Inc. v. Hard Rock Hotel Holdings, LLC*, 808 F. Supp. 2d 552, 567 (S.D.N.Y. 2011) (Pauley, J.).

Premises alone. Planet has breached that contract by failing to maintain its dealership at the Dealership Premises, by operating a dealership at the Unauthorized Location, and by using the Mitsubishi Marks and other Mitsubishi trade names, trademarks, and trade dress at or in connection with the Unauthorized Location.[39] Finally, MMNA has suffered damages as a result of Planet's breaches, including the costs associated with its attempts to enforce the Dealer Agreement, and will also suffer damage to its goodwill and reputation among consumers and other authorized Mitsubishi dealers as a result of Planet's breach.[40]

In short, Mitsubishi has established a substantial likelihood of success on the merits of its claims in this action.

### C.   MMNA Faces a Substantial Threat of Irreparable Harm

"The irreparable harm requirement is 'the single most important prerequisite for the issuance of a preliminary injunction.'"[41] A movant can establish irreparable harm if it demonstrates that "there is a *continuing harm* which cannot be adequately redressed by final relief on the merits and for which money damages cannot provide adequate compensation."[42]

---

[39] In addition to being a breach of the Dealer Agreement, Planet's sale of new Mitsubishi motor vehicles at the Unauthorized Location violates the New York Vehicle & Traffic Law. It provides that registered dealers of new motor vehicles may operate dealerships "only from a location or locations authorized for such sale . . . [by] the manufacturers or distributors of such new motor vehicles." N.Y. Vehic. & Traff. Law § 415.7. That law further provides that "[i]f any location shall cease to be approved by the new motor vehicle manufacturer or distributor . . . then such new motor vehicle dealer shall immediately cease selling or leasing such line or make of new motor vehicle from such location . . . ." *Id.* Accordingly, because MMNA has given no such approval, New York law prohibits Planet from selling new Mitsubishi vehicles at the Unauthorized Location.
[40] *See* McElroy Declaration ¶¶ 32-35.
[41] *Gluco Perfect* 2014 U.S. Dist. LEXIS 141966, at *45 (quoting *Grout Shield Distribs., LLC v. Elio E. Salvo, Inc.*, 824 F. Supp. 2d 389, 402 (E.D.N.Y. 2011) (Bianco, J.)).
[42] *Kamerling v. Massanari*, 295 F.3d 206, 214 (2d Cir. 2004) (emphasis added).

"[L]oss of reputation, good will, and business opportunities" can constitute irreparable harm.[43] "Specifically, in cases involving trademarks and trade names, irreparable harm 'exists … when the party seeking the injunction shows that it will lose control over the reputation of its trademark [or trade name] … because loss of control over one's reputation is neither calculable nor precisely compensable.'"[44]

Accordingly, courts in this Circuit usually find irreparable harm in cases where a previously authorized user operates a store, and utilizes trade names, trademarks, or trade dress, in violation of the relevant franchise or license agreement. As the Second Circuit has explained, "[w]hen in the licensing context unlawful use and consumer confusion have been demonstrated, a finding of irreparable harm is *automatic*."[45]

Planet's operation of a dealership, and use of the Mitsubishi trade names, trademarks, and trade dress, at the Unauthorized Location is unlawful because it is in breach of the Dealer Agreement. MMNA can demonstrate resulting consumer confusion as to whether Planet is operating that dealership and using the Mitsubishi trade names, trademarks, and trade dress with MMNA's authorization as a matter of law. Moreover, MMNA is suffering irreparable damage to its goodwill and reputation, and will continue to do so if Planet continues to operate a dealership and to use Mitsubishi trade names, trademarks, and trade dress in an unauthorized manner.[46]

---

[43] *See, e.g., Rex Med. L.P. v. Angiotech Pharms. (US), Inc.*, 754 F. Supp. 2d 616, 621 (S.D.N.Y. 2010) (McMahon, J.).
[44] *Gluco Perfect*, 2014 U.S. Dist. LEXIS 141966, at *45-46 (quoting *Grout Shield*, 824 F. Supp. 2d at 402) (alterations in original).
[45] *Church of Scientology Int'l v. Elmira Mission of the Church of Scientology*, 794 F.2d 38, 42 (2d Cir. 1986) (emphasis added); *Dial-A-Mattress*, 841 F. Supp. at 1357 ("In alleging trade name . . . unfair competition, the senior user of the mark is presumed to suffer irreparable harm to their good will and reputation when the activities [at issue] demonstrate a 'high probability' of consumer confusion as to sponsorship of the trade name"); *see also, e.g., Dunkin' Donuts*, 216 F. Supp. 2d at 40; *Century 21 Real Estate*, 2007 U.S. Dist. LEXIS 34108, at *6-7.
[46] *See* McElroy Declaration ¶¶ 32-35.

Accordingly, MMNA will suffer irreparable harm unless Planet is restrained and enjoined from operating a Mitsubishi dealership, and using the Mitsubishi trade names, trademarks, and trade dress, at the Unauthorized Location. There is no adequate remedy at law because Planet's conduct is ongoing, and MMNA will continue to be harmed as long as Planet continues to operate the dealership, and use the Mitsubishi trade names, trademarks, and trade dress, at the Unauthorized Location in violation of the Dealer Agreement.

### D. The Harm to MMNA Outweighs Any Potential Damage to Planet

To the extent this Court considers the balance of hardships here, the balance tips decidedly in MMNA's favor.[47] MMNA has suffered and will continue to suffer irreparable harm absent the relief sought. The only burden on Planet is that it will have to stop engaging in conduct to which it has no right to engage. Specifically, Planet has no right to use the Mitsubishi trade names, trademarks, and trade dress, and has no right to operate a Mitsubishi dealership, at the Unauthorized Location. Further, any such "burden" on Planet is entirely self-inflicted, and results from Planet's own failure to renew its lease at the Dealership Premises. Planet cannot blame MMNA for hardships resulting from Planet's own acts or failure to act.

In any event, the burden on Planet is minimal because the majority of motor vehicles sold at Planet's dealership are used vehicles. MMNA does not seek here to preclude Planet's sale of used vehicles.[48] MMNA only seeks to prevent Planet from selling new Mitsubishi vehicles at the Unauthorized Location, and from using the MMNA trade names, trademarks, and trade dress for any purpose at the Unauthorized Location. To the extent Planet might contend that MMNA wrongfully withheld its consent for Planet to operate at the Unauthorized Location—though such

---

[47] *See, e.g., Christian Louboutin*, 696 F.3d at 215
[48] McElroy Declaration ¶ 36.

44380711v.1

a contention is baseless—its remedy is "money damages, and not the continued unauthorized use of [the] trademarks."[49]

### E.    Notice to Planet

Pursuant to Federal Rule of Civil Procedure 65(b)(1), the Court "may issue a temporary restraining order without written or oral notice to the adverse party or its attorney only if (A) specific facts in an affidavit or a verified complaint clearly show that immediate and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition; and (B) the movant's attorney certifies in writing any efforts made to give notice and the reasons why it should not be required."

As set forth in the McElroy Declaration, and as described above, MMNA will suffer immediate and irreparable injury, loss, and damage before Planet can be heard in opposition because Planet's unauthorized operation of a Mitsubishi dealership and use of the Mitsubishi trade names, trademarks, and trade dress are ongoing.[50]

Moreover, as set forth in the accompanying Maluf Declaration, counsel for MMNA contacted Planet's counsel by telephone on February 13, 2018 and renewed MMNA's demand, set forth in its February 8, 2018 letter, that Planet cease its unauthorized use of the Mitsubishi trade names, trademarks, and trade dress.  Planet's counsel responded that he stood by the arguments set forth his February 9, 2018 letter.[51]  Accordingly, counsel for MMNA stated to

---

[49] *See S&R Corp. v. Jiffy Lube Int'l, Inc.*, 968 F.2d 371, 377 (3d Cir. 1992); *see also, e.g., Prudential Ins. Co.*, 1996 U.S. Dist. LEXIS 16433, at *8 (granting injunctive relief and noting that "[s]hould, however, Prudential hereafter be found to have wrongfully terminated [defendant's] franchise, monetary damages is the remedy and will suffice").
[50] McElroy Declaration ¶¶ 32-35.
[51] Maluf Declaration ¶ 4.

Planet's counsel that MMNA intended to seek a temporary restraining order and preliminary injunction from this Court on the afternoon of February 13, 2018.[52]

### F.  A Temporary Restraining Order and Injunctive Relief Are Appropriate

In light of the foregoing, injunctive relief is appropriate here.  MMNA will suffer irreparable injury if Planet, and its agents, representatives, associates, employees, and all those acting in concert or participation with Planet, are not restrained as follows:

Planet, including its subsidiaries, affiliates, officers, directors, employees, and all others acting in concert with each and all of them, shall be prohibited from utilizing the Mitsubishi Marks or any other Mitsubishi trade name, trademark, or trade dress at the Unauthorized Location; and

Planet, including its subsidiaries, affiliates, officers, directors, employees, and all others acting in concert with each and all of them, shall be prohibited from operating a Mitsubishi dealership at the Unauthorized Location, but Planet may continue to sell used motor vehicles at the Unauthorized Location.

MMNA is willing to post a bond in an amount that the Court deems appropriate.

MMNA, therefore, asks the Court to issue the temporary restraining order as soon as possible.

MMNA further asks that the Court, after hearing MMNA's motion for a preliminary injunction, issue a preliminary junction against Planet.

To the extent the Court declines to grant the temporary restraining order on an *ex parte* basis relying solely on the papers filed contemporaneously herewith, MMNA respectfully requests that the Court hold an emergency hearing—in person or telephonically, as may be

---

[52] *See id.*

convenient to the Court—on MMNA's Application as soon as the parties can be heard. An emergency hearing is necessary because, as set forth in herein, MMNA has suffered and will continue to suffer irreparable harm until Planet's conduct is restrained and enjoined. Accordingly, good cause exists for MMNA's request for an emergency hearing.

## IV.    PRAYER FOR RELIEF

WHEREFORE, MMNA prays for the following relief:

A.    The Court should order that Planet, along with its agents, employers, employees, attorneys and those persons in active concert or participation with Planet, be enjoined through a temporary restraining order and preliminary injunction as follows:

> a.    Planet, including its subsidiaries, affiliates, officers, directors, employees, and all others acting in concert with each and all of them, shall be prohibited from utilizing the Mitsubishi Marks or any other Mitsubishi trade name, trademark, or trade dress at the Unauthorized Location; and

> b.    Planet, including its subsidiaries, affiliates, officers, directors, employees, and all others acting in concert with each and all of them, shall be prohibited from operating a Mitsubishi dealership at the Unauthorized Location.

Respectfully submitted,

SEYFARTH SHAW LLP

DATED: February 13, 2018

By: _Edward F. Maluf_
Edward F. Maluf
Owen R. Wolfe
620 Eighth Avenue
New York, New York 10018
Telephone: (212) 218-5500
Facsimile: (212) 218-5526

*Attorneys for Plaintiff Mitsubishi Motors North America, Inc.*

-18-